**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:

VARIG LOGISTICA S.A.,

      Debtor in foreign proceeding.

_____/

Chapter 15
Case No. 09-15717-RAM

VOLO LOGISTICS LLC,

MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS II
L.P.,

MATLINPATTERSON GLOBAL
OPPORTUNITIES PARTNERS
(CAYMAN) II L.P.,

MATLINPATTERSON GLOBAL
PARTNERS II LLC,

MATLINPATTERSON GLOBAL
ADVISERS LLC,

MATLINPATTERSON PE
HOLDINGS LLC (f/k/a
MATLINPATTERSON ASSET
MANAGEMENT LLC)

                Plaintiffs,

v.

VARIG LOGISTICA S.A.,

                Defendant.

_____/

Adv. Pro. No. 20-01243-BKC-
RAM-A

**PLAINTIFFS' OPPOSITION TO THE FOREIGN REPRESENTATIVE'S MOTION FOR**
**AN ORDER (1) ENFORCING THE AUTOMATIC STAY, AND (2) DISMISSING OR**
**<u>ABATING THE ADVERSARY PROCEEDING AGAINST THE DEBTOR</u>**

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     ARGUMENT ......................................................................................................... 5

   A.    THE ADVERSARY PROCEEDING NAMES THE CORRECT PARTY DEFENDANT ........................ 5

   B.    THE ADVERSARY PROCEEDING WAS PROPERLY SERVED ON VARIGLOG ........................... 9

   C.    THIS COURT OWES NO COMITY TO THE FOREIGN PROCEEDING WHEN
       ADJUDICATING THE ANTECEDENT QUESTION OF WHETHER A U.S. LAW
       GOVERNED AND SITED PROPERTY INTEREST FORMS A PART OF THE
       FOREIGN DEBTOR'S PROPERTY .......................................................................... 11

   D.    THERE HAS BEEN NO VIOLATION OF THE AUTOMATIC STAY BY FILING
       THE ADVERSARY PROCEEDING IN THIS COURT ................................................... 20

      1.    *Cause Exists To Lift The Stay In Favor Of New York*.................................... 20

      2.    *The Automatic Stay Does Not Apply To Proceedings Filed In This Court
          And There Is No Stay As A Matter Of Brazilian Law*................................... 23

III.    CONCLUSION .................................................................................................... 24

i

## TABLE OF AUTHORITIES

### Cases

*Alland v Consumers Credit Corp.*,
    54 F.R.D. 252 (S.D.N.Y. 1971) ................................................................... 10

*AXA Equitable Life Ins. Co. v. Gelpi*,
    12 So.3d 783 (Fla. 3d DCA 2009) ......................................................... 17, 18

*Citigroup Global Markets, Inc. v. KLCC Investments, LLC*,
    No. 06 Civ. 5466(LBS), 2007 WL 102128 (S.D.N.Y. 2007) ................................. 14

*Elliot Int'l L.P. v. Vitro S.A.B. de C.V.*,
    95 A.D.3d 565 (N.Y. App. Div. 2012) ................................................................... 19

*In re Agrokor d.d.*,
    591 B.R. 163 (Bankr. S.D.N.Y. 2018) ................................................................... 16

*In re Air Crash Near Nantucket Island, Massachusetts*,
    392 F. Supp. 2d 461 (E.D.N.Y, 2005) ................................................................... 19

*In re Artimm, S.r.L.*,
    335 B.R. 149 (Bankr. C.D. Cal. 2005) ................................................................... 14

*In re Berau Capital Resources Pte Ltd.*,
    540 B.R. 80 (Bankr. S.D.N.Y. 2015) ................................................................... 12

*In re British American Ins. Co. Ltd., et al.*,
    Nos. 11-3117-EPK and 11-3118-EPK,
    2013 WL 211314 (Bankr. S.D. Fla. Jan. 18, 2013) ................................................ 6

*In re Bryan Road, LLC*,
    382 B.R. 844 (Bankr. S.D. Fla. 2008) ................................................................... 21

*In re CHS Elecs., Inc.*,
    261 B.R. 538 (Bankr. S.D. Fla. 2001) ................................................................... 21

*In re Continental Airlines*,
    152 B.R. 420 (D. Del. 1993) ....................................................................... 21, 22

*In re Cozumel Caribe, S.A. de C.V.*,
    482 B.R. 96 (Bankr. S.D.N.Y. 2012) ............................................................... 6, 14

*In re Dallas*,
    No. 10–12141, 2011 WL 6101832 (Bankr. S.D. Ga. Nov. 29, 2011) ................... 21

*In re Eger*,
  507 B.R. 1 (Bankr. N.D. Ga. 2014) ........................................................................ 23

*In re Feingold*,
  730 F.3d at 1268 (11th Cir. 2013) ........................................................................ 21

*In re Irish Bank Resolution Corp*,
  No. 18-1797-LPS, 2019 WL 4740249 (D. Del. Sept. 27, 2019) ................................ 7

*In re Koreag, Controle et Revision S.A.,*
  961 F.2d 341 (2d Cir. 1992) ................................................................................ 13

*In re Markus*,
  610 B.R. 64 (Bankr. S.D.N.Y. 2019) .................................................................... 16

*In re North Coast Village, Ltd.*,
  135 B.R. 641 (B.A.P. 9th Cir. 1992) ............................................................... 23, 24

*In re Petition of Wuthrich*,
  337 B.R. 262 (Bankr. S.D.N.Y. 2006) ................................................................ 14

*In re Rede Energia S.A.,*
  515 B.R. 69 (Bankr. S.D.N.Y. 2014) .................................................................... 16

*In re Serviços de Petróleo Constellation S.A.*,
  600 B.R. 237 (Bankr. S.D.N.Y. 2019) ................................................................. 11

*In re U.S. Steel Canada Inc.,*
  571 B.R. 600 (Bankr. S.D.N.Y. 2017) ............................................................ 12, 16

*In re Vitro S.A.B. de CV,*
  791 F.3d 1031 (5th Cir. 2012) ............................................................................. 16

*Josephthal & Co. Inc. v. John Phillips & Co.*,
  No. 00 CIV 3479(JSM), 2001 WL 1488177 (S.D.N.Y. Nov. 21, 2001) ............... 17, 18

*Josephthal & Co. Inc. v. John Phillips & Co.*,
  No. 00 CIV 3479(JSM), 2001 WL 1658207 (S.D.N.Y. Dec 27, 2001) ................. 17, 18

*Josephthal & Co. Inc. v. John Phillips & Co.,*
  No. 00 CIV. 3479(JSM), 2001 WL 286719 (S.D.N.Y. Mar. 23, 2001) ................... 17

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A., de C.V.,*
  412 F.3d 418 (2d Cir. 2005) ........................................................................... 13, 14

*Mastec Latin America v. Inepar S/A Industrias E Construcoes*,
  No. 03 CIV 9892(GBD), 2004 WL 1574732 (S.D.N.Y. July 13, 2004) ................... 10

*Recyclers Consulting Grp., Inc. v. IBM-Japan, Ltd.*,
    No. 96 Civ. 2137(JFK), 1997 WL 615014 (S.D.N.Y. Oct. 3, 1997) ........................................ 10

*Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*,
    460 B.R. 106 (Bankr. S.D.N.Y. 2011) ........................................................................................ 7

*Sec. Inv'r Prot. Corp. v. bernard L. Madoff Inv. Sec., LLC*,
    474 B.R. 76 (S.D.N.Y. 2012) ...................................................................................................... 7

*SNP Boat Service S.A. v Hotel Le St. James,*
    483 B.R. 776 (S.D. Fla. 2012) .................................................................................................. 16

**<u>Statutes</u>**

11 U.S.C. § 1502 ...................................................................................................................... 13

11 U.S.C. § 1509 ...................................................................................................................... 18

11 U.S.C. § 1520 ...................................................................................................................... 13

11 U.S.C. § 1521 ...................................................................................................................... 13

**<u>Other Authorities</u>**

1 COLLIER ON BANKRUPTCY ¶ 10.01 .......................................................................................... 7

8 COLLIER ON BANKRUPTCY ¶ 1502.01 ..................................................................................... 12

8 COLLIER ON BANKRUPTCY ¶ 1509.02 .............................................................................. 16, 17

UNCITRAL, MODEL LAW ON CROSS-BORDER INSOLVENCY WITH GUIDE TO
    ENACTMENT AND INTERPRETATION, U.N. Sales No. E.14.V.2 (2014) .................................... 24

Volo Logistics LLC, MatlinPatterson Global Opportunities Partners II L.P., MatlinPatterson Global Opportunities Partners (Cayman) II L.P., MatlinPatterson Global Partners II LLC, MatlinPatterson Global Advisers LLC and MatlinPatterson PE Holdings LLC (formerly known as MatlinPatterson Asset Management LLC) (the "**MP Parties**" or "**Plaintiffs**"), pursuant to the Court's scheduling order [ECF No. 182, ¶5 in the Main Case and ECF No. 17, ¶5 in the Adversary Proceeding], by and through their undersigned counsel, respectfully submit this Opposition to the Foreign Representative's Motion for an Order (1) Enforcing the Automatic Stay, and (2) Dismissing, or Alternatively, Abating the Adversary Proceeding Against the Debtor, Varig Logistica S.A. ("**Debtor**" or "**VarigLog**") (the "**Motion**") [ECF No. 174 in the Main Case and ECF No. 14 in the Adversary Proceeding].

## I.    PRELIMINARY STATEMENT

1.    The Adversary Proceeding seeks a determination of whether certain property rights form a part of the Debtor's foreign bankruptcy estate under the applicable New York law, a question that is antecedent to the distributive rules of the foreign bankruptcy administration and properly resolved under local, not foreign, law, without deferring to the foreign proceeding. Specifically, the Adversary Proceeding Complaint (the "**Complaint**") alleges that the Debtor, prior to its bankruptcy in Brazil, entered into two debt assumption agreements (the "**DAAs**"), expressly governed by New York law and providing for the exclusive jurisdiction of a New York court that relieved the Debtor of $250 million in debt obligations it owed to certain of the Plaintiffs. Those debts do not now appear as creditor claims in the foreign bankruptcy and the Debtor enjoys the benefit of that U.S. law debt relief. But in consideration therefor, the DAAs provided, *inter alia*, a release of the claims that are now being asserted against the Plaintiffs in a recently-filed lawsuit in Brazil (the "**Brazilian Action**").

1

2.    The existence of those claims under U.S. law—pursuant to the DAA releases—and whether they can form a part of the Debtor's foreign bankruptcy estate at the same time that the Debtor relies on those same U.S. law contracts to be relieved of $250 million in debt, is the ultimate question before this Court in the Adversary Proceeding.  Can the Debtor take the half of a U.S. law contract from which it benefits as part of its estate, but simultaneously leave the half reflecting its concomitant U.S. law obligations behind?  This is plainly a question of U.S. (New York) law, one that falls squarely within this Court's jurisdiction, competence, and responsibility to decide.

3.    The Adversary Proceeding is not an attempt by a creditor to circumvent the priority scheme or distribution of assets in the foreign bankruptcy proceeding.  Nor is it a collateral attack on the bankruptcy process in Brazil.  The Brazilian Action in which the claims that are the subject of the Adversary Proceeding are asserted is a *separate lawsuit* from the foreign main bankruptcy proceeding, and the MP Parties are not creditors in the Brazilian bankruptcy in respect of the loans underlying the DAAs—precisely because the Debtor's estate enjoys the U.S. law benefits of the DAAs.  Nor does the Adversary Proceeding seek any monetary relief from the Debtor's estate in the foreign main proceeding.  To the contrary, the question before this Court is whether the Debtor can take the benefit of $250 million in debt forgiveness it received under New York law but *at the same time* disavow the consideration for that relief to sue the Plaintiffs in Brazil on claims that were released.

4.    On the present Motion, the question before the Court is whether: (a) *it* should adjudicate this U.S. law question within this Chapter 15 case; (b) grant stay relief, in the alternative, so that Plaintiffs can take the matter to a New York court; or (c) as the Foreign Representative purports to request on behalf of the defendant in the Adversary Proceeding, dismiss or abate the

Adversary Proceeding and thereby effectively relegate that U.S. law question to the lawsuit that has been filed against Plaintiffs in Brazil.

5.      The Court should direct option (a) or (b), but not (c).  Option (a) is appropriate because this case—addressing a question of property ownership governed by U.S. law that is antecedent to the distributive rules applied in the foreign bankruptcy proceeding—is a paradigm case concerning the U.S. property interests of the Debtor for adjudication in a Chapter 15 proceeding.  U.S. Courts sitting in bankruptcy proceedings ancillary to a foreign main proceeding recognize that a threshold question of whether a U.S. property right exists, such as to form a part of a foreign debtor's estate in the first place, is best determined under U.S. law by a U.S. court and that such determination does not interfere with the foreign main proceeding's administration of the debtor's *bona fide* assets.  Further, and as discussed below, other courts faced with precisely the same circumstances here of a U.S. law release of claims being asserted in a foreign jurisdiction have recognized the U.S. courts' responsibility to construe and enforce that release, without deferring to the foreign court.

6.      Option (b) is appropriate, in the alternative, because "cause" exists to lift the stay and permit Plaintiffs to bring their Complaint in a New York court.  The Adversary Proceeding concerns a question of New York law:  The nature and existence of property in the form of New York contractual rights, which is antecedent to the foreign bankruptcy proceeding.  The parties agreed to the exclusive jurisdiction of a New York court to construe those contractual rights.  Resolution of this action will not in any way obstruct the foreign main proceeding or be in conflict with it inasmuch as it does not concern the distribution of any assets within the estate.

7.      Option (c) should fail because the claims the MP Parties allege in the Adversary Proceeding (assumed to be true for purposes of a motion to dismiss) fundamentally reflect an

3

injustice on the part of the Debtor, perpetrated under U.S. law, whereby it claims the benefit of U.S. law (substantial debt relief) under a New York law contract, but not the obligations (the releases) for which that benefit was exchanged.  A U.S. court should protect the MP Parties from such an injustice rather than derogate that role to a foreign court, in a lawsuit the very existence of which Plaintiffs say violates their U.S. law rights.  The Foreign Representative's Motion offers no legitimate basis for this Court to *assist* the Debtor in selectively claiming the benefit of U.S. law while disavowing it under the very same contracts for purposes of suing the MP Parties in a new lawsuit in Brazil, on claims that the Debtor has waived and released under New York law for substantial and valid consideration.

8.     It follows that the Foreign Representative's various arguments designed to confuse the parties to each proceeding, obscure the applicable law as between the United States and Brazil, and conflate this Motion to dismiss with the ultimate merits of the Adversary Proceeding, are unavailing.  In this respect, much of what the Foreign Representative says about the Brazilian proceedings, Brazilian law, and which party does what in Brazil, is beside the point at this stage (in addition to being flat-out wrong), for three reasons.

9.     *First*, the Foreign Representative's arguments (*e.g.*, whether the plaintiff in the Brazilian Action would be bound by the releases or whether the relief sought in the Adversary Proceeding is appropriate) go to the ultimate merits of the Plaintiffs' claims in the Adversary Proceeding, not whether this Court should adjudicate the claims asserted in the Adversary Proceeding at all.

10.     *Second*, issues of foreign law must be adequately proved, and to the extent this Court is inclined to grapple with the various merits issues of Brazilian law advanced by the Motion—raised by way of an affidavit from the lawyer representing the Debtor in its Brazilian

4

lawsuit—they are contested, as reflected in the independent expert declaration of Ivo Waisberg accompanying this Opposition.  Plainly, they warrant a hearing and are not for a motion to dismiss.

11.    *Third* and, at the end of the day, the idea espoused by the Foreign Representative is that the Debtor's estate in Brazil can somehow, as a matter of Brazilian law or procedure, cherry-pick the benefits of a U.S. law contract, but disown its concomitant burdens.  The MP Parties seek before this Court the protection of U.S. law, as applied by a U.S. Court, from precisely the sort of bizarre and unjustifiable result that the Foreign Representative espouses under Brazilian law ostensibly in support of the Motion.  While the MP Parties will vigorously defend the Brazilian claims on their merits in Brazil, the MP Parties are entitled to the assistance of this Court with respect to a question of U.S. law (whether certain property rights form a part of the Debtor's estate at all) that precedes the issues before the bankruptcy court in Brazil (the administration of such property that *is* a part of the debtor's estate) and in respect of which no comity or deference is owed.

## II.    ARGUMENT

### A.    The Adversary Proceeding Names The Correct Party Defendant

12.    As a starting point, Plaintiffs properly sued the correct counterparty/signatory to the DAAs against which Plaintiffs seek to enforce their U.S. law rights under those agreements— whether in this Court or New York—just as they would do absent any bankruptcy proceedings. The question, then, is whether the existence of this Chapter 15 case or the Brazilian bankruptcy case somehow changes who the counterparty is under those agreements for purposes of the U.S. law claims advanced in the Adversary Proceeding.  The answer is that they do not, and there is no need for this Court to resort to Brazilian law, as the Foreign Representative urges, to so conclude.

13.    For the reasons explained above, and elaborated upon below, the Adversary Proceeding raises a paradigmatic Chapter 15 question about the Debtor's pre-bankruptcy U.S.

property rights as signatory to the DAAs.  This Court has jurisdiction to adjudicate the existence

of those rights as a matter of U.S. law.  By petitioning for and receiving Chapter 15 relief, the

Debtor has voluntarily submitted to the jurisdiction of this Court in respect of its U.S. property.

*See e.g.,* ECF. No. 1.  Thus, as the Order Granting Petition for Recognition of Foreign Main

Proceeding reflects, "*VarigLog* filed a Chapter 15 petition with this Court."  ECF. No. 77

("**Recognition Order**") (emphasis added).  As the Recognition Order further reflects, the Chapter

15 case is in the name of the Debtor and it makes orders with respect to the Debtor and its assets

within the territorial jurisdiction of the United States.  *Id.*  Such orders could not have been made

if this Court did not have jurisdiction over the Debtor and its U.S. property.

14.     It is of no moment that a Foreign Representative makes the Chapter 15 filing, in a

representative capacity, for purposes of this Court exercising jurisdiction over the foreign Debtor

and its U.S. territorial assets.  Accordingly, it is not necessary for Plaintiffs to sue the Foreign

Representative in name, either in place of or in addition to the Debtor.  Such arguments have been

given short shrift in this District.  *See, e.g.*, *In re British American Ins. Co. Ltd., et al.,* Adv. Pro.

Nos. 11-3117-EPK and 11-3118-EPK, 2013 WL 211314, at *1 n.3 (Bankr. S.D. Fla. Jan. 18, 2013)

(dismissing in a footnote the argument that related adversary proceedings ought to have been

pursued in the names of the foreign representatives rather than in the names of the Chapter 15

debtors "[b]ecause the foreign representatives act solely on behalf of the Plaintiffs").  Indeed,

adversary proceedings are consistently filed against *debtors* in Chapter 15 cases without naming a

foreign representative as a defendant.  *See, e.g., In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. 96

(Bankr. S.D.N.Y. 2012); *In re Innova Global, Ltd.,* Adv. Pro. No. 20-1011-R (Bankr. N.D. Okla.);

*In re Alitalia Societá Aerea Italiana S.p.A.,* Adv. Pro. No. 18-1578 (Bankr. S.D.N.Y.); *In re

Zandian*, Adv. Pro. No. 17-5016 (BTB) (Bankr. D. Nev.); *In re Sanjel (USA) Inc.*, Adv. Pro. No.

16-5043 (CAG) (Bankr. W.D. Tex.); *In re Arctic Glacier International, Inc. et al.,* Adv. Pro. No. 15-51732 (Bankr. D. Del.).

15.    The Foreign Representative's exposition of the *Barton* doctrine—a doctrine of questionable extraterritorial application, if any, and which in the bankruptcy context is primarily concerned with protecting *trustees* from individual liability and frivolous or vexatious claims against them in an individual capacity, over the execution of their duties—is of no relevance whatsoever here.  The Adversary Proceeding is against the Debtor, has nothing to do with the Foreign Representative or his individual conduct, has not named the Foreign Representative in any capacity and seeks no relief as against the Foreign Representative.  *See* 1 COLLIER ON BANKRUPTCY P 10.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2020) [Hereinafter "COLLIER ON BANKRUPTCY"] (*Barton* doctrine applies "when the action is *against the trustee*" and aims to protect the trustee "from *unjustified personal liability* for acts taken within the scope of his official duties" (emphasis added)).

16.    Nor do either of the cases cited by the Foreign Representative support the view that leave from a foreign court must be sought under the *Barton* doctrine.  *See In re Irish Bank Resolution Corp*, No. 18-1797-LPS, 2019 WL 4740249, at *4 (D. Del. Sept. 27, 2019) (holding that the extraterritorial application of the Barton doctrine was a matter of first impression that need not be decided) and *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011) (addressing the different question of whether a U.S. Court that had appointed a U.S. trustee was required to give leave for a foreign action against that trustee); *aff'd in part* 474 B.R. 76, 87 (S.D.N.Y. 2012) (holding it was not necessary to determine this question.).

17.    The Foreign Representative endeavors to confuse the issue by suggesting, as a matter of Brazilian law and procedure, that the Judicial Administrator (ADJUD Administradores

Judiciais Ltda EPP ("**ADJUD**")), not the Debtor, owns the claims being asserted against the Plaintiffs in Brazil, and therefore, that Plaintiffs have named the wrong party in the Adversary Proceeding and/or the releases in the DAAs do not apply to the claims asserted in the Brazilian Action.  ECF No. 174 ¶¶ 16–21, 31, 33.  These are merits arguments going to the substance of the Adversary Proceeding and are neither appropriate for determination at the motion to dismiss stage nor relevant to whether this Court, as a matter of U.S. law and procedure, has jurisdiction to adjudicate the Plaintiffs' claims against the named defendant.  In any event, and for the avoidance of doubt, the Foreign Representative is *wrong* as a matter of Brazilian law.

18.     First of all, the Foreign Representative's own filings show clearly that the plaintiff in the Brazilian Action is the Debtor, VarigLog (now known in Brazil as the Bankrupt Estate of VarigLog), *not* ADJUD or the Foreign Representative.  Counsel for the Foreign Representative, in an affidavit dated July 22, 2020, described the Brazilian Action as a "Brazilian lawsuit filed by the VarigLog Estate."  ECF No. 185, p. 8, ¶2.  The Foreign Representative's own translation of the complaint in the Brazilian Action shows the same both in the caption and on the first page (which begins "*This lawsuit is being filed by the Bankrupt Estate. . .*"), ECF No. 170, Exhibit 1, pp. 1 and 2, as does all of the documentation evidencing service of the Brazilian Action on the MP Parties, ECF No. 185, Exhibits A and B.

19.     Further, as explained in the accompanying Expert Declaration of Ivo Waisberg, VarigLog is not "defunct" as the Foreign Representative wrongly contends, but continues to exist as the same *legal entity*, merely with its name changed for Brazilian purposes to "The Estate of VarigLog" to reflect, for the protection of third parties, its bankrupt *status* in Brazil.  Declaration of Ivo Waisberg, at ¶¶ 21–23 ("**Waisberg Decl.**").  Relatedly, the Foreign Representative (as the owner and legal representative for ADJUD) is not a "successor" to VarigLog, ECF No. 174 ¶ 18,

but is simply (and as the name and common sense suggest) a "representative" with responsibility for the control of the company while it remains in bankruptcy, in place of its former management. As Mr. Waisberg explains, the Foreign Representative is a service provider to the Debtor, and will (through ADJUD) receive five percent of VarigLog's total realized assets as compensation. Waisberg Decl. at ¶ 33.

20.    It is therefore plainly VarigLog that is the claimant in the Brazilian Action and that ostensibly—but for the DAAs—owns and advances the claims asserted there.  As Mr. Waisberg explains:  "The Plaintiff in the Brazilian Action is the Estate of VarigLog, as the assets and obligations of VarigLog are currently known, but which is, in all relevant aspects, the same legal entity of Varig Logística S.A. which signed the Debt Assumption Agreements that are the subject of the Adversary Proceeding before this Court, not ADJUD or Mr. Aguiar."  The Foreign Representative is not himself a party; he is involved only insofar as he represents the Trustee, ADJUD, that, in turn, manages VarigLog while it is in bankruptcy, in exchange for a fee.  Waisberg Decl. at ¶¶ 36–37.

### B.    The Adversary Proceeding Was Properly Served On VarigLog

21.    In accordance with Bankruptcy Rule 7004 and the plain terms of the DAAs, Plaintiffs properly effected service on VarigLog by first class mail addressed to VarigLog's designated agent for service of process.  Adversary Proceeding ECF No. 13.  Each of the DAAs "*irrevocably appoints*" Law Debenture Corporate Services Inc. ("**Law Debenture**") as VarigLog's agent, and provides that service upon such agent was to be effective and "*deemed to be personal service on [VarigLog] for all purposes notwithstanding any failure to mail courtesy copies of such legal process to [VarigLog], or any failure on the part of [VarigLog] to receive the same.*"  Compl., Exs. B and C at ¶ 9(b).

22.     VarigLog, having designated an irrevocable agent and waived any need for the agent to forward the papers, cannot now contend that service was invalid because VarigLog itself apparently failed, in breach of the DAAs, to actually appoint Law Debenture as its agent.  Law Debenture had apparent authority to accept service under the DAAs and it is of no moment that it did not forward the papers to the Debtor, as other cases squarely addressing this same scenario make clear.  *See Mastec Latin America v. Inepar S/A Industrias E Construcoes*, No. 03 CIV 9892(GBD), 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004) (service was effective upon Brazilian corporation when the plaintiff mailed a copy of the summons and complaint to CT Corporation, the contractual process agent, despite Brazilian corporation's failure to actually designate CT Corporation as its agent and CT Corporation's refusal to accept service); *Recyclers Consulting Grp., Inc. v. IBM-Japan, Ltd*., No. 96 Civ. 2137(JFK), 1997 WL 615014, at *3 (S.D.N.Y. Oct. 3, 1997) ("Regardless of whether Defendant informed CT Corporation of its appointment under the contract or whether CT Corporation accepted that appointment, by specifically designating CT Corporation as its sole agent for service of process in the contract, [Defendant] cloaked CT Corporation with apparent authority to accept service on its behalf.").

23.     VarigLog (much less, its Foreign Representative) cannot now complain that it did not have notice of the proceedings.  VarigLog clearly had notice of the proceedings which were filed in the Chapter 15 case in which VarigLog is the Debtor party.  In any event, under the DAAs, VarigLog waived any need for its process agent to forward this Court's summons; accordingly, no further notification is or was necessary.  *See, e.g.*, *Alland v Consumers Credit Corp.*, 54 F.R.D. 252, 255 (S.D.N.Y. 1971) ("[A] waiver of notice provision validly confers jurisdiction on this Court, especially when the defendant has actual notice of the suit.").

24.    The Foreign Representative—who currently controls VarigLog as explained above—had actual notice of the Adversary Proceeding because the Complaint was served on his counsel in addition to being filed as an adversary proceeding in the Chapter 15 case.  ECF No. 13. In response to his counsel being served with the Complaint, the Foreign Representative had his counsel contact Law Debenture, confirm that Law Debenture *had* been served with papers and then—instead of attempting to cure VarigLog's breach in failing to have appointed Law Debenture as its process agent in accordance with the DAAs—exacerbated that breach by having Law Debenture confirm in writing that Law Debenture was never appointed as VarigLog's agent.  *See* ECF No. 174 ¶ 7 n.3, Ex. A.  The Foreign Representative cannot manufacture a service issue by abetting the Debtor's contract breach.

C.    **This Court Owes No Comity To The Foreign Proceeding When Adjudicating The Antecedent Question Of Whether A U.S. Law Governed And Sited Property Interest Forms A Part Of The Foreign Debtor's Property**

25.    The Adversary Proceeding seeks a determination of whether the Debtor can claim the benefit under a New York law contract of $250 million in debt forgiveness but at the same time disavow the consideration for that benefit of the releases of claims now being asserted against Plaintiffs in a lawsuit in Brazil.  The Adversary Proceeding therefore involves a question as to the existence and scope of the Debtor's U.S. property rights and obligations, which logically precedes the administration of the Debtor's estate in the foreign main bankruptcy proceeding and does not interfere with it, as the question goes to the issue of whether the claims alleged in a separate lawsuit in Brazil can form a part of the Debtor's estate, as a matter of U.S. law, in the first place.

26.    New York law contract rights and obligations are intangible property of the debtor which are deemed located in New York when, as here, New York is the jurisdiction whose law governs and whose courts have been selected to adjudicate disputes.  *See In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237, 269 (Bankr. S.D.N.Y. 2019) ("This Court has previously held

11

that a debtor's contract rights, including rights pursuant to debt that contains a New York governing law and forum selection clause, constitute intangible property of the debtor in New York."); *In re U.S. Steel Canada Inc.,* 571 B.R. 600, 610 (Bankr. S.D.N.Y. 2017) (holding that the rights a debtor has pursuant to a contract constitutes intangible property located in the chosen jurisdiction of the governing law and forum.); *In re Berau Capital Resources Pte Ltd.*, 540 B.R. 80, 84 (Bankr. S.D.N.Y. 2015) (holding that a New York law governed indenture constituted intangible property located in New York).

27.     Whether VarigLog can purport to claim as its property the legal claims it now pursues in the Brazilian Action, or whether those claims no longer belong to VarigLog because it released them in exchange for $250 million of debt forgiveness, is a question of U.S. law, concerning intangible property rights located in New York.  It follows that this is exactly the kind of case that a U.S. bankruptcy court exercising Chapter 15 jurisdiction should decide.  Chapter 15 offers assistance to a foreign proceeding, including with respect to the debtor's property within the territorial jurisdiction of the United States.  *See e.g.,* 11 U.S.C. § 1502, 1520, 1521; 8 COLLIER ON BANKRUPTCY ¶ 1502.01 ("chapter 15, and the Model Law, intend that ancillary cases be limited to property within the recognizing country.").  Determining the extent of the Debtor's property within the jurisdiction of the United States, *i.e.* pursuant to U.S. law governed contracts, is therefore a key part of this Court's jurisdictional mandate.

28.     To that end, U.S. courts "may resolve *bona fide* questions of property ownership arising under local law while a foreign bankruptcy proceeding is ongoing without deferring to the parallel foreign proceeding on grounds of international comity" because such questions "are antecedent to the distributive rules of bankruptcy administration" applied in the main proceeding and "are best resolved under local law." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A.,*

*de C.V.,* 412 F.3d 418, 426 (2d Cir. 2005) ("*Altos Hornos*"); *In re Koreag, Controle et Revision S.A.,* 961 F.2d 341, 349–350 (2d Cir. 1992) ("*In re Koreag*").

29.     *In re Koreag* considered whether it was appropriate to turn over funds in a New York bank account to a foreign representative when the ownership of the funds was disputed.  The court held that it was *not* appropriate to defer to the foreign proceeding on the antecedent question of whether the disputed property belonged to the foreign debtor at all, a question the court went on to find was a matter of U.S. law.  Instead, this was a "threshold determination" for the U.S. courts under the applicable New York law.  *Id.* at 349.  The Court reasoned that "[p]roperty interests have an independent legal source, antecedent to the distributive rules of bankruptcy administration, that determines in the first instance the interests of claimant parties in particular property" and "such a threshold determination" could not prejudice the debtor's other creditors "because they have valid claims only against the estate's bona fide assets." *Id.* at 349.  In this regard, the court distinguished the issue of property ownership from "an effort by a normal bankruptcy creditor, without any plausible ownership claim to a specific asset, to gain a preferred position vis-à-vis other creditors by initiating a separate legal proceeding." *Id.*  Applying New York law, the Court determined that some of the funds in question did not belong to the debtor and refused to turn those funds over to the foreign representative.  *Id.* at 356.

30.     The Second Circuit reaffirmed and expanded the application of *Koreag* in *Altos Hornos*, holding that all *bona fide* questions of property ownership, regardless of the context in which they arise, are "antecedent to the distributive rules of bankruptcy administration because they seek to determine whether an asset is actually part of the debtor's estate, rather than deciding the entitlement of certain creditors to pieces of that estate" and reiterated that these questions are "best resolved under local law . . . without deferring to the parallel foreign proceeding on grounds

of international comity." 412 F.3d at 426. On the facts before it, the court found this was not the case where J.P. Morgan claimed ownership of funds in an account in New York that it plainly did *not* own and instead had an obligation to distribute "to pay down the same debt that is the subject of the" foreign main bankruptcy proceeding in Mexico. *Id.* at 427. In these circumstances, said the court, J.P. Morgan, which had duly made a claim before the Mexican bankruptcy court for the debt that it was owed, was simply a creditor of the debtor in that foreign proceeding, making "a thinly veiled attempt to extract partial payment from the debtor on the debt owed outside a foreign bankruptcy proceeding." *Id.*

31.     The rule set out in *Koreag* and *Altos Hornos* has been applied consistently by other courts, including after the adoption of Chapter 15. *See In re Cozumel Caribe, S.A. de C.V.*, 482 B.R. at 111–17  (applying *Altos Hornos* and *Koreag* to a Chapter 15 adversary proceeding which sought declaratory judgment that certain funds held in a cash management account in New York, containing debtor and non-debtor-affiliate commingled funds, were not property of the foreign debtor; holding, in light of the particular facts, that it was necessary to temporarily stay the U.S. proceeding to direct that the parties first seek clarification from a Mexican court as to the scope and effect of a prior interim protective order entered by the Mexican court in respect of the subject funds); *Citigroup Global Markets, Inc. v. KLCC Investments, LLC*, No. 06 Civ. 5466(LBS), 2007 WL 102128 at *4 (S.D.N.Y. 2007) (applying *Altos Hornos* and *Koreag* to adjudicate conflicting claims of ownership over a securities account, notwithstanding parallel bankruptcy proceedings in New Jersey); *In re Artimm, S.r.L.*, 335 B.R. 149, 163 (Bankr. C.D. Cal. 2005) (applying *Altos Hornos* and *Koreag* to adjudicate conflicting claims of ownership over funds subject to a U.S.-law settlement agreement, notwithstanding parallel bankruptcy proceedings in Italy); *In re Petition of Wuthrich*, 337 B.R. 262, 267 (Bankr. S.D.N.Y. 2006) (applying *Altos Hornos* and *Koreag* to deny

a foreign bankruptcy trustee's application for an injunction of U.S. litigation over whether the foreign debtor owned (or had abandoned) a trademark in the United States).

32.     In sum, it is the domain of a U.S. court sitting in a Chapter 15 case to determine whether, as a matter of U.S. law, U.S. situated property forms a part of the debtor's *bona fide* estate, when that question is a matter of dispute.  Comity need not, and should not, be afforded to the foreign main proceeding (or, in this case, a separate foreign lawsuit in Brazil, outside the main proceeding) on such questions.  The Adversary Proceeding is precisely such a case, asking this Court to determine—as a matter of U.S. law—whether the claims being made in the Brazilian Action, a separate lawsuit from the foreign bankruptcy proceeding, belong to VarigLog, in view of the New York law releases that were provided as consideration for the $250 million in debt relief that VarigLog relies upon New York law to have received.

33.     The Adversary Proceeding is not an action seeking monetary relief or a creditor claim seeking a priority share of the debtors' legitimate assets; no distributive provisions of Brazilian bankruptcy law are implicated.  The MP Parties are *not* creditors of VarigLog in the foreign main proceeding in respect of the debt forgiven by the DAAs, and the MP Parties have not claimed otherwise (nor could they under U.S. law) in the Brazilian bankruptcy.  The Brazilian Action is not part of the foreign main proceeding—it is an entirely separate lawsuit.  *See* Waisberg Decl, ¶ 45.  This Court's adjudication of whether those claims are available to VarigLog as a question of U.S. law antecedent to the administration of VarigLog's *bona fide* estate in Brazil does not interfere with the foreign main proceeding in any respect.

34.     The comity cases cited by the Foreign Representative are entirely consistent with this position.  Those cases, like *Koreag* and *Altos Hornos*, consider that the purpose of comity is to avoid piecemeal creditor claims against the limited assets of the foreign debtor in the United

States.  Accordingly, comity supports "*the equitable and orderly distribution of a debtor's property*" by "*assembling all claims against the limited assets in a single proceeding*" and affording deference to the determinations made in that proceeding.  *SNP Boat Service S.A. v Hotel Le St. James,* 483 B.R. 776, 785–786 (S.D. Fla. 2012).  The Foreign Representative's cited cases all concern deference toward foreign proceedings to determine claims of actual creditors of the foreign debtor's estate—not, as here, the antecedent question of what assets form a part of the debtor's estate to begin with, as a matter of U.S. law.  *See, e.g, id.* (refusing to second-guess the outcome for an individual creditor in foreign insolvency proceedings); *In re: U.S. Steel Canada, Inc.*, 571 B.R. 600 (recognizing foreign main proceeding and the reorganization plan sanctioned in that foreign proceeding); *In re Agrokor d.d.,* 591 B.R. 163 (Bankr. S.D.N.Y. 2018) (recognizing Croatian restructuring procedure and resulting settlement agreement); *In re Vitro S.A.B. de CV,* 791 F.3d 1031 (5th Cir. 2012) (*declining* to extend comity to, or to enforce in the United States, a Mexican bankruptcy reorganization plan that would serve to deprive U.S. creditors of U.S.-law guaranties provided by non-debtor affiliates of the foreign debtor); *In re Rede Energia S.A.,* 515 B.R. 69 (Bankr. S.D.N.Y. 2014) (recognizing a Brazilian reorganization plan on comity grounds); *In re Markus*, 610 B.R. 64 (Bankr. S.D.N.Y. 2019) (assisting a foreign representative to take control of assets located in a U.S. trust account which belonged to the foreign debtor, for purposes of a Russian bankruptcy proceeding).

35.    To the extent that the Foreign Representative suggests that the Court *must* extend comity to him pursuant to §1509(b)(3), ECF No. 174 ¶ 28, this is incorrect.  Section 1509 is expressly "subject to any limitations that the court may impose consistent with the policy of this chapter" and, while it requires that the courts provide access to a foreign representative, it does not provide "self-executing relief."  *See* 8 Collier On Bankruptcy ¶ 1509.02.  Section 1509

"mandates courtesy and respect for the foreign proceeding . . . it does not mandate relief.  The foreign representative must still make a case that the relief being sought is warranted."  *Id.*

36.     Non-bankruptcy courts faced with the same circumstances here, *i.e.,* U.S. law governed releases that cover claims arising in foreign proceedings, have concluded that they should decide the scope and effect of the U.S. law releases for themselves and protect the legitimate expectations of U.S. based parties, rather than defer to foreign proceedings brought in breach of a party's asserted U.S. law rights.  *See Josephthal & Co. Inc. v. John Phillips & Co.,* No. 00 CIV. 3479(JSM), 2001 WL 286719 (S.D.N.Y. Mar. 23, 2001); 2001 WL 1488177 (S.D.N.Y. Nov. 21, 2001); 2001 WL 1658207 (S.D.N.Y. Dec 27, 2001); *see also AXA Equitable Life Ins. Co. v. Gelpi*, 12 So.3d 783, 786 (Fla. 3d DCA 2009).

37.     In *Josephthal*, a dispute arose in respect of a loan transaction negotiated by a law firm in England ("Phillips"), on behalf of its client, Brock Equities Limited ("Brock").  Josephthal & Co, Inc. ("Josephthal"), was the broker for the transaction.  After $3 million disappeared from Josephthal's account during the transaction, Brock sued Josephthal in New York.  Josephthal and Brock settled the claim by a New York law governed settlement agreement, pursuant to which Brock limited its right to damages from Josephthal and Josephthal was protected against indemnification claims by Phillips as a joint tortfeasor.  Brock then sued Phillips in England and Phillips impleaded Josephthal as a third-party defendant seeking indemnification and contribution, forcing Josephthal to appear before a foreign court and potentially depriving it of the benefits of the settlement agreement.  In response, Josephthal sued Brock and Phillips in New York, seeking an injunction requiring Brock to amend its pleading in England to report the terms and effect of the New York law settlement to the English court, and seeking other declaratory relief as to Josephthal's U.S. law rights.

38.    The *Josephthal* court granted the injunctive and declaratory relief requested.  It observed that a court "which sits in New York and regularly applies New York law, is certainly in a better position to decide the effect of a release executed under New York law than is a court sitting in a foreign country." *Josephthal,* 2001 WL 1488177, at *4. The court further considered that by refusing to advise the English court about the terms and effect of the settlement, Brock was "depriving Josephthal of its rights to the benefits of the settlement agreement" in breach of the implied covenant of good faith and fair dealing under New York law. *Josephthal,* 2001 WL 1658207, at *2.  Accordingly, Josephthal was in need of immediate relief, absent which Josephthal was "faced with the need to defend itself in the courts of a foreign nation because a party who has entered into a settlement agreement in this Court is breaching the terms of its contract."  Injunctive relief was appropriate because it did "no more than require Brock to do what it was obligated to do at the commencement of the litigation in England: advise the English court that by entering into a settlement with Josephthal that was governed by New York law, Brock had limited its right to damages." *Josephthal,* 2001 WL 1488177, at *2.  As such there was "no 'gratuitous interference' with proceedings in another court" because the Court was merely "requiring Brock to be honest with the courts in England." *Id.*, at *4; *see also AXA Equitable Life Ins. Co*, 12 So.3d at 786 (granting an employer summary judgment on breach of contract claims after former employees violated contractual releases by suing AXA in Brazil where, pursuant to their general releases, the employees were "barred from bringing any claim or action arising out of their employment against AXA in *any* forum.").

39.    While the Foreign Representative devotes an entire section of the Motion to arguing that Plaintiffs are not entitled to an "anti-suit injunction," Plaintiffs do not in fact seek an anti-suit injunction, but rather have modeled their requested relief precisely on the relief that was granted

by the court in *Josephthal*.  In any event, this is just another argument that improperly attempts to pre-litigate the merits of the Adversary Proceeding—*i.e.*, what relief would be appropriate—for purposes of a motion to dismiss.  But as the Complaint reflects, the Plaintiffs seek, as in *Josephthal,* injunctive relief requiring VarigLog to be up front with the Brazilian court and to amend its pleadings to discontinue reliance on matters that VarigLog released, *not* an anti-suit injunction on the continuation of the Brazilian Action.  Such relief is appropriate here for the same reasons it was appropriate in *Josephthal*.

40.    U.S. courts have repeatedly held that they are best suited to determine matters of U.S. law and have declined to give comity to foreign proceedings where, as here, U.S. law questions are involved.  *See, e.g.*, *In re Air Crash Near Nantucket Island, Massachusetts*, 392 F. Supp. 2d 461, 477–478 (E.D.N.Y, 2005) (declining to defer on grounds of comity to a first-filed Egyptian action involving a U.S. law governed contract because a U.S. court was "clearly better qualified to interpret the laws of its country than a foreign court" and such a decision "could hardly be viewed as . . . compromising principles of comity" given U.S. law was at the heart of the proceedings; observing in this regard that there was no reason to expect that the Egyptian court would not comply with the U.S. court's interpretation and application of U.S. law inasmuch as it would assist in the resolution of the claims pending in the Egyptian action); *Elliot Int'l L.P. v. Vitro S.A.B. de C.V.*, 95 A.D.3d 565 (N.Y. App. Div. 2012) (holding comity was not appropriate where defendants executed unconditional guaranties governed by New York law and irrevocably submitted to the jurisdiction of the New York courts, despite defendants' argument that the court should abstain in favor of a foreign bankruptcy involving their parent entity).

41.    All parties, including VarigLog and its creditors, will benefit from resolving Plaintiffs' claims now, and in the proper forum, particularly as the Debtor would have to seek

enforcement of any Brazilian judgment in the United States where the MP Parties' assets are located.  It will not be able to do so if this Court determines as a matter of U.S. law that those same claims were released.  Further, and as in the Egyptian air crash case, there is no reason why the Brazilian court overseeing the Brazilian Action should not welcome this Court's resolution of U.S. law issues that may serve to resolve the claims pending in the Brazilian Action.  Comity, after all, is meant to be a two-way street.  This Court should therefore hear and resolve the Adversary Proceeding, rather than dismiss or abstain from doing so on the basis of an overreaching interpretation of comity that eclipses both precedent and principle.

**D.    There Has Been No Violation Of The Automatic Stay By Filing The Adversary Proceeding In This Court**

42.    The Foreign Representative contends that the Adversary Proceeding should be dismissed because it was filed in violation of Section 362's automatic stay.  But to the extent that the automatic stay even applies to the claims asserted, Plaintiffs have petitioned this Court in the alternative to lift the stay for "cause" to pursue their claims in New York, and cause exists for such relief to be granted.  *See* Compl. ¶¶ 95–105.  There is no stay to adversary proceedings in the Chapter 15 itself or arising from the Brazilian bankruptcy.  Waisberg Decl. at ¶¶ 12–20.  For the reasons that follow, the Foreign Representative's attempt to expand the Section 362 stay to insulate the Debtor from any sort of U.S. legal process while at the same time allowing it to utilize the benefits of the U.S. court system, is without merit.

*1.    Cause Exists To Lift The Stay In Favor Of New York*

43.    To the extent the stay is applicable, "cause" exists to lift the stay to allow the MP Parties' to pursue their claims in New York, relief pointedly requested by the MP Parties in the Adversary Proceeding.

20

44.    In the Eleventh Circuit, courts define cause on a case-by-case basis considering the "totality of the circumstances."  *In re Feingold*, 730 F.3d 1268, 1276 (11th Cir. 2013); *In re Bryan Road, LLC*, 382 B.R. 844 (Bankr. S.D. Fla. 2008).  Relief should be granted here for the same reasons that the Delaware District Court granted stay relief for an action to enforce a release in the agreed forum in *In re Continental Airlines,* 152 B.R. 420 (D. Del. 1993).

45.    *First*, the policies underlying the automatic stay are not implicated here.  The stay is designed "to protect the bankruptcy estate from being whittled away by creditors' lawsuits."  *Id.* at 426.  The Adversary Proceeding, by contrast is "not attempting to obtain payment from [the Debtor] to the detriment of other creditors" and "will not interfere with the orderly administration of [the Debtor's] bankruptcy, or the assets of the bankrupt estate."  *Id.*; *see also In re CHS Elecs., Inc.*, 261 B.R. 538, 542 (Bankr. S.D. Fla. 2001) (Mark, C.J.) (finding the stay did not apply to proceeds of an insurance policy held in the debtor's name where proceeds were not the debtor's property per the policy's terms); *In re Dallas*, No. 10–12141, 2011 WL 6101832, *5 (Bankr. S.D. Ga. Nov. 29, 2011) (lifting stay to permit insurer to pursue declaratory judgment action against the debtor in state court to determine the extent of the debtor's rights under an insurance contract, holding that the declaratory action "does not interfere with the bankruptcy case because it seeks only a determination of whether insurance coverage exists and does not seek to recover any of the assets of Debtor or the bankruptcy estate" and that "while the *outcome* of the declaratory action may impact the bankruptcy estate allowing the question of coverage to be addressed in another forum does not prejudice the creditors' interests.").  A decision in favor of the Plaintiffs will not result in the Plaintiffs obtaining, or creditors missing out on, payment from VarigLog's *bona fide* assets.  As explained above, the Adversary Proceeding raises a question antecedent to the administration of the Debtor's *bona fide* assets.

46.     *Second*, the parties expressly agreed to exclusive New York jurisdiction for disputes relating to the interpretation and enforcement of the DAAs.  *Cf. In re Continental Airlines, Inc.*, 152 B.R. at 422.  This plainly cuts in favor of granting stay relief to permit the Plaintiffs' claims to be determined in the exclusive forum chosen by the parties for those claims.

47.     *Third*, the MP Parties will suffer hardship if forced to raise their U.S. law claims, to which a U.S. forum provision is attached, in the very Brazilian Action that they contend breaches the DAAs—a court system which is unfamiliar with New York law, may "interpret the agreement in such a way as to dilute its intended purpose and effectiveness" and which may take a decade or more to finally resolve the dispute.  Waisberg Decl. at ¶ 51; *In re Continental Airlines*, 152 B.R. at 425.  VarigLog, however, would not suffer significant hardship.  It has already committed to lengthy Brazilian litigation, it is already before this Court, and litigating this one issue in the United States, as it agreed, will not prejudice it.  *Id.* at 424–425.

48.     *Fourth*, the MP Parties are likely to succeed on the merits of their claims, which may fully or substantially resolve the disputes between the MP Parties and the Debtor.  VarigLog has released the MP Parties from all claims, including future claims, "*based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to*" December 31, 2008, that in any way relate to VarigLog.  VarigLog's Brazilian action is overwhelmingly based on such occurrences, and the Debtor's position that it may claim the benefit of $250 million in debt forgiveness from a New York law contract without honoring the releases it gave in consideration is meritless.  *In re Continental Airlines,* 152 B.R. at 425–426 (holding that there was "at least some probability" that the words of the release may bar the introduction of certain facts in separate litigation).

> 2.     *The Automatic Stay Does Not Apply To Proceedings Filed In This Court*
> *And There Is No Stay As A Matter Of Brazilian Law*

49.     Citing no legal authority, the Foreign Representative incorrectly asserts that stay relief is required before bringing the Adversary Proceeding before *this Court*.   He then misrepresents the MP Parties' decision not to risk violating the stay by suing in New York as an admission that the stay applies to adversary proceedings before this Court.  *See* ECF No. 174, ¶ 10. The Foreign Representative is wrong on both counts.

50.     Adversary proceedings have consistently been filed by third parties against the debtor in Chapter 15 cases involving foreign main proceedings, without any suggestion or adjudication that stay relief was required, either from the Chapter 15 court or a foreign court.  *See, e.g.*, *In re Innova Global, Ltd.,* Adv. Pro. No. 20-1011-R (Bankr. N.D. Okla.); *In re Alitalia Societá Aerea Italiana S.p.A.,* Adv. Pro. No. 18-1578 (Bankr. S.D.N.Y.); *In re Zandian*, Adv. Pro. No. 17-5016 (BTB) (Bankr. D. Nev.); *In re Sanjel (USA) Inc.*, Adv. Pro. No. 16-5043 (CAG) (Bankr. W.D. Tex.); *In re Arctic Glacier International, Inc. et al.,* Adv. Pro. No. 15-51732 (Bankr. D. Del.).

51.     This is consistent with the application of the automatic stay in cases brought under other chapters of the Bankruptcy Code, where the stay does not apply to claims brought before the court where the bankruptcy is pending (a rule the Foreign Representative expressly acknowledges, *see* ECF No. 174 at ¶ 11).  *See, e.g.*, *In re Eger*, 507 B.R. 1, 1 (Bankr. N.D. Ga. 2014) (holding that "[t]he automatic stay does not apply to proceedings against the debtor that arise in the same bankruptcy court where the debtor's bankruptcy case is pending."); *In re North Coast Village, Ltd.*, 135 B.R. 641, 643–44 (B.A.P. 9th Cir. 1992) (same).

52.     The Foreign Representative's argument that the "purposes of Chapter 15," *see* ECF No. 174 at ¶ 13, compel a different result is wrong.  The Model Law (upon which Chapter 15 is

based) envisaged that limitations on the stay would be consistent with those in the domestic context.  *See* UNCITRAL, MODEL LAW ON CROSS-BORDER INSOLVENCY WITH GUIDE TO ENACTMENT AND INTERPRETATION, U.N. Sales No. E.14.V.2 (2014) ¶¶ 38, 183.  As in the other chapters of the Bankruptcy Code, the stay serves to centralize U.S. actions relating to the bankruptcy in the Chapter 15 court and to provide the court with control over which actions will be allowed to go forward—it does not provide the debtor with an "*absolute*" "*breathing spell*" against any and all actions in the United States, while at the same time allowing the debtor's Foreign Representative access to the U.S. courts on the debtor's behalf.  *See generally In re North Coast Village, Ltd.*, 135 B.R. 641 (discussing the policy reasons for the scope of the stay). Cooperation between United States courts and foreign courts is not undermined by allowing this process to unfold within the Chapter 15 case and its corresponding protections.

53.     This is especially the case given there is no stay as a matter of Brazilian law.  As Mr. Waisberg explains, under Brazilian law, actions like the Adversary Proceeding, which are not creditor claims for a fixed dollar amount but pursue unascertained amounts or, as in the case of the Adversary Proceeding, seek relief other than damages, are not stayed and may proceed outside of bankruptcy, whether in the Brazilian or a foreign court system.  *See* Waisberg Decl. at ¶¶12–20.

## III.    CONCLUSION

54.     For all of the foregoing reasons, the Foreign Representative's Motion should be denied.  Alternatively, and if the Court considers it appropriate, relief from the automatic stay should be granted to allow the MP Parties to bring their claims before a New York court.

55.     Finally, while the MP Parties consider meritless the procedural points raised by the Foreign Representative concerning the defendant to be named and whether relief from the stay is required to file the Adversary Proceeding, it bears mention that such matters are easily rectified by simply granting the MP Parties leave to amend the complaint and/or directing that stay relief is

granted effective as of the date the MP Parties commenced the Adversary Proceeding.  These are

not grounds for dismissal or abatement of the Adversary Proceeding.

Dated: August 26, 2020              BERGER SINGERMAN LLP

                             1450 Brickell Avenue
                             Suite 1900
                             Miami, FL 33131
                             Tel: (305) 755-9500
                             Fax: (305) 714-4340

                             By: */s/ Paul Steven Singerman*
                             Paul Steven Singerman
                             Florida Bar No. 378860
                             singerman@bergersingerman.com
                             Christopher Andrew Jarvinen
                             Florida Bar No. 021745
                             cjarvinen@bergersingerman.com
                             Paul A. Avron
                             Florida Bar No. 50814
                             pavron@bergersingerman.com

                             Kelly Koscuiszka (admitted *pro hac vice*)
                             SCHULTE ROTH & ZABEL, LLP
                             919 Third Avenue
                             New York, NY 10022
                             Tel: (212) 756-2465
                             Fax: (212) 593-5955

                             Tyler B. Robinson (admitted *pro hac vice*)
                             SIMPSON THACHER & BARTLETT LLP
                             425 Lexington Avenue
                             New York, NY 10017
                             Tel: (212) 455-2000
                             Fax: (212) 455-2502

                             *Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such filing to all CM/ECF participants in this case as indicated on the attached CM/ECF Service List on this the 26th day of August 2020.

*/s/ Paul Steven Singerman*
Paul Steven Singerman

26

## CM/ECF SERVICE LIST

**Main Case:**

- Paul A Avron     pavron@bergersingerman.com,
  efile@bergersingerman.com;efile@ecf.inforuptcy.com;mmorgan@bergersingerman.com
- Leyza F. Blanco     lblanco@sequorlaw.com, jdiaz@sequorlaw.com
- Jennie L Colabelli     jcolabelli@saavlaw.com, eservice@saavlaw.com
- Stephen P. Drobny     sdrobny@shutts.com,
  jmaddox@joneswalker.com;bturner@joneswalker.com;mvelapoldi@joneswalker.com
- Annette C Escobar     aescobar@sequorlaw.com, Escobar.annette1975@gmail.com
- Gregg M Ficks     gmf@cpdb.com
- Gregg M Ficks     gmf@cpdb.com
- Robert G Fracasso Jr     rfracasso@shutts.com, fsantelices@shutts.com
- Gregory S Grossman     ggrossman@sequorlaw.com, ngonzalez@sequorlaw.com
- Andrea S. Hartley     andrea.hartley@akerman.com, janet.salinas@akerman.com
- Phillip M. Hudson III     pmhudson@duanemorris.com,
  gagosto@duanemorris.com;jfgarcia@duanemorris.com;mlswing@duanemorris.com;AutoDocketMIA@duanemorris.com
- Christopher A Jarvinen     cjarvinen@bergersingerman.com,
  mdiaz@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- Kelly Koscuiszka     kelly.koscuiszka@srz.com, ecf-5315b84b2a77@ecf.pacerpro.com
- Isaac M Marcushamer     isaac@markmigdal.com, eservice@markmigdal.com
- Juan J Mendoza     jmendoza@sequorlaw.com, ngonzalez@sequorlaw.com
- Miami-Dade County Tax Collector     mdtcbkc@miamidade.gov
- Nyana A Miller     nmiller@sequorlaw.com, tcrockett@sequorlaw.com
- Office of the US Trustee     USTPRegion21.MM.ECF@usdoj.gov
- Carlos E. Sardi     carlos@sardilaw.com, carlos@ecf.courtdrive.com
- Paul Steven Singerman     singerman@bergersingerman.com,
  mdiaz@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- Paul Steven Singerman     singerman@bergersingerman.com,
  mdiaz@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- Gilbert K Squires     gilbertsquires@squiresbenson.com

**Adversary Proceeding:**

- Paul A Avron     pavron@bergersingerman.com,
  efile@bergersingerman.com;efile@ecf.inforuptcy.com;mmorgan@bergersingerman.com
- Christopher A Jarvinen     cjarvinen@bergersingerman.com,
  mdiaz@bergersingerman.com;efile@bergersingerman.com;efile@ecf.inforuptcy.com
- Juan J Mendoza     jmendoza@sequorlaw.com, ngonzalez@sequorlaw.com