

**ORDERED in the Southern District of Florida on October 29, 2021.**

Robert A. Mark, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| In re | ) | CASE NO. 09-15717-RAM |
| | ) | CHAPTER 15 |
| VARIG LOGISTICA S.A., | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| VOLO LOGISTICS LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ADV. NO. 20-1243-RAM-A |
| | ) | |
| VARIG LOGISTICA S.A., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### ORDER (1) DISMISSING ADVERSARY PROCEEDING, (2) DENYING REQUEST FOR STAY RELIEF AS MOOT, (3) DENYING MOTION TO QUASH AS MOOT, AND (4) STAYING DISCOVERY

### Introduction

Two contested matters are pending in this chapter 15 case, a discovery dispute in the main case and a motion to dismiss the above-styled adversary proceeding. The foreign debtor, Varig Logistica S.A., was a Brazilian cargo airline that is in a liquidation proceeding in Brazil. The fiduciary currently appointed to administer that liquidation, Vanio Cesar Pickler Aguiar (the "Foreign Representative" or "FR") has filed, in Brazil, corporate malfeasance claims against several defendants consisting of private equity investment funds and their affiliates who indirectly owned and controlled the Debtor for about three years before the Debtor filed a reorganization case in Brazil in 2009. These entities continued to control the Debtor for about three more years after the Debtor filed its Brazilian reorganization case until that case was converted to a liquidation proceeding in 2012.

The defendants in the Brazil proceeding, who are also the Plaintiffs in this adversary proceeding and will be referred to collectively as "MP" or the "MP Entites", are the following entities: (i) Volo Logistics LLC ("Volo"); (ii) MatlinPatterson Global Opportunities Partners II LP ("MP Fund"); (iii) MatlinPatterson Global Opportunities Partners (Cayman) II LP

(together with the MP Fund, the "MP Funds"); (iv) MatlinPatterson Global Advisors LLC ("MP Advisors"); (v) MatlinPatterson Global Partners II LLC; and (vi) MatlinPatterson PE Holdings LLC (f/k/a MatlinPatterson Asset Management LLC).

In the Brazil proceeding, the Foreign Representative alleges that the MP Entities operated the Debtor in a manner that stripped the Debtor of its equity to the detriment of the Debtor's creditors. Although the Foreign Representative sued the MP Entities in a Brazilian bankruptcy court, he served discovery on Volo in this Court and Volo seeks to quash the Foreign Representative's domestic discovery requests.

In this adversary proceeding, the MP Entities seek entry of a judgment enjoining the Foreign Representative from further prosecuting claims against them in Brazil. They argue that the Debtor released all claims against its owners in exchange for the MP Entities releasing the Debtor from liability for significant operating loans. In short, The MP Entities argue that the Foreign Representative cannot now pursue claims released by the Debtor.

Because the MP Entities are now debtors in chapter 11 cases pending before the United States Bankruptcy Court for the Southern District of New York, the discovery dispute is stayed. However, for the reasons explained in more detail below, the Court finds cause to dismiss the adversary proceeding and to deny, as moot,

the MP Entities' alternative request for relief from the automatic stay to prosecute in a New York Court its claims for declaratory or injunctive relief.

## Background

### *The MP Entities' Acquisition of the Debtor*

In general terms, the MP Entities are a private equity firm. For a more specific description of the corporate structure relevant to this opinion, the Court refers interested parties to the Adversary Proceeding Complaint, DE #1 in Adv. Pro. No. 20-1243, and to the "Structure Chart of MP Parties, CAT and VarigLog" that is appended to that Complaint as Exhibit "A."

The Debtor, Varig Logistica S.A. ("Varig" or the "Debtor"), operated a Brazilian cargo airline.  In 2006, the MP Entities acquired Varig through a special-purpose entity called Volo Logistics, LLC ("Volo").  Volo has two direct subsidiaries, CAT Aérea LLC ("CAT") and Volo do Brasil SA ("Volo dB").  Volo dB wholly owns Varig.  Thus, Varig is an indirect subsidiary of Volo, and Volo is a special-purpose entity formed and owned by the MP Funds.

In 2006 and 2007, the MP Entities indirectly loaned money to Varig through Volo and through Volo's subsidiary, CAT.  Volo made direct loans to Varig.  Together with CAT, Volo also made loans to a special-purpose entity called VRG Linhas Aereas S.A. ("VRG").

4

Varig and Volo dB briefly owned VRG.  Varig assumed the CAT and Volo loans to VRG, which further indebted Varig to MP.

In sum, MP acquired the Debtor in 2006, and in 2006 and 2007, made operating loans that were payable by the Debtor.  By 2008, the record reflects the Debtor's financial decline.  A summary of some of the significant events evidencing the decline follows.

### *Nonpayment of Aircraft Leases*

On February 14, 2008, Pegasus Aviation II, Inc. and Pegasus Aviation IV, Inc. sued Varig in the Circuit Court of the 11th Judicial Circuit, in and for Miami-Dade County, Florida, Case No. 08-08006-CA-31 (the "Miami Case").  Other Pegasus entities subsequently joined the Miami Case as additional plaintiffs.

On October 24, 2008, Pegasus Aviation I, Inc. sued Varig in the Supreme Court of the State of New York, County of New York, Case No. 08603076 (the "New York Case").  The Court will generically refer to all Pegasus entities, individually or collectively, as "Pegasus."

Varig leased aircraft from Pegasus, and Pegasus sued Varig for breach of contract (nonpayment), conversion and replevin.  Although Varig was the sole defendant in the Miami Case, when Pegasus sued Varig in New York, Pegasus sued Varig and, under alter-ego theories of liability, also sued the MP Entities.

*The Debt Assumption Agreements*

Also in 2008, the MP Entities indirectly released Varig from liability for $250 million in debt due to CAT and Volo in exchange for a general release from claims by Varig.  The terms of the releases are memorialized in two debt assumption agreements (together, the "DAAs") that are dated December 31, 2008.[1]  Pursuant to the DAAs, Varig assigned to its direct parent, Volo dB, $250 million in debt obligations owing to Volo or CAT (the "Debt Release").  Varig also agreed to release, indemnify and hold harmless Volo and the other MP Entities from all claims "that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to [December 31, 2008]" (the "Claims Release"). [DE #1-2 in Adv. Pro. No. 20-1243, p.6; DE #1-3 in Adv. Pro. No. 20-1243, pp.5-6].

The DAAs contain identical forum selection clauses that read as follows:

> Any action or proceeding to interpret or enforce this Agreement may be brought in the Supreme Court of the State of New York, New York County, or the United States District Court for the Southern District of New York, should that court have subject matter jurisdiction over the dispute.  Each party irrevocably submits to the personal jurisdiction of such courts in any action or proceeding to interpret or enforce this Agreement[.] Each party irrevocably waives, with respect to any action or proceeding to interpret or enforce this

---

[1] Copies of the DAAs are attached to the Complaint in Adv. Pro. No. 20-1243 [DE #1] as Exhibits "B" and "C".

Agreement, ([1]) any objection which it may have at any time to the laying of venue in the courts identified in this paragraph, (2) any claim that either of the courts identified in this paragraph is an inconvenient forum, and (3) the right to object that either court identified in this Section does not have personal jurisdiction over such party.  Notwithstanding the foregoing, [Volo and CAT] may bring suit and enforce this Agreement in any court of competent jurisdiction in Brazil.

[DE #1-2 in Adv. Pro. No. 20-1243, pp.8-9; DE #1-3 in Adv. Pro. No. 20-1243, p.8].  The DAAs also include identical choice-of-law provisions that identify "the substantive laws of the State of New York, without regard to New York's principles of conflicts of laws[,]" as the applicable law for purposes of interpreting or enforcing the DAAs. [DE #1-2 in Adv. Pro. No. 20-1243, p.10; DE #1-3 in Adv. Pro. No. 20-1243, pp.9-10].

### *The Reorganization in Brazil*

On March 3, 2009, Varig filed for bankruptcy relief in Brazil. Varig's Brazilian bankruptcy case began as a reorganization similar to bankruptcy cases filed in the United States under Chapter 11 of the U.S. Bankruptcy Code.  The Brazilian bankruptcy court entered an order for relief on March 13, 2009.

On March 20, 2009, Volo extended $7.5 million in debtor-in-possession financing to Varig and obtained from Varig a general release of any claims by the Debtor against Volo or the MP Funds arising from transactions with the Debtor. [DE #2 in the Chapter 15 Case, para. 31; DE #159 in the Chapter 15 Case, paras. 11-12].

*The Chapter 15 Petition and Attempt to Enjoin the New York*

*Case Against MP Advisors*

On March 31, 2009, the Debtor, through its initial foreign representative, Alexandre Sávio Abs Da Cruz ("Cruz"), filed in this Court (i) a petition for recognition of the Brazilian bankruptcy proceeding as a foreign main proceeding, Case No. 9-15717 (the "Chapter 15 Case") and (ii) an adversary proceeding against Pegasus for injunctive relief, Adv. Pro. No. 09-01298 (the "Pegasus Adv. Pro."). In the Pegasus Adv. Pro., the then foreign representative, Mr. Cruz, moved on an emergency basis for issuance of a preliminary injunction barring Pegasus from commencing or continuing any action against the Debtor or against MP Advisors[2] [DE #2 in the Pegasus Adv. Pro.].

Before the Court ruled on Cruz's emergency motion for a preliminary injunction, the Debtor agreed to allow Pegasus to proceed with the New York Case and, on April 21, 2009, Cruz dismissed without prejudice the Pegasus Adv. Pro. [DE #35 in the Pegasus Adv. Pro.]. On May 11, 2009, the Court entered an agreed order granting Pegasus stay relief [DE #78 in the Chapter 15 Case].

---

2 When the FR filed the Pegasus Adv. Pro., MP Advisors was the only non-debtor defendant in the New York Case. Pegasus later amended the complaint to add the MP Funds, Volo and Volo dB as additional defendants. The Second Amended Complaint is attached as Ex. D to DE #151 in the Chapter 15 Case.

Also on May 11, 2009, the Court entered an order granting the Debtor's petition for recognition of the Brazilian reorganization proceeding as a foreign main proceeding [DE #77 in the Chapter 15 Case].

The New York Case settled in September 2017.  The Debtor agreed to entry of a $41 million judgment.  The terms of the settlement are otherwise confidential, including whether, and how much, the MP Entities who were defendants in the New York Action paid, or agreed to pay, to settle the claims against them.

### The Brazilian Case is Converted to a Liquidation

On September 27, 2012, the Brazilian bankruptcy court entered an order compelling conversion of the Debtor's foreign reorganization proceeding into a liquidation proceeding. [DE #122 in the Chapter 15 Case, Ex. 1].  The Brazilian bankruptcy court appointed the Debtor's current foreign representative, Dr. Vânio Cesar Pickler Aguiar (the "FR" or the "Foreign Representative"), to liquidate the Debtor by order dated October 11, 2012. [DE #122 in the Chapter 15 Case, Ex.2].

### The FR's Pursuit of Claims Against MP: Discovery in the Chapter 15 Case

The FR served three subpoenas on MP Advisors and one subpoena on Volo LLC between August 2017 and December 2018.  Those subpoenas generally sought discovery regarding MP's relationship and loan

9

transaction history with the Debtor.  For a detailed history of the initial subpoenas, *see MatlinPatterson Global Advisers LLC and Volo Logistics LLC's Opposition to the Foreign Representative's Motion to Compel* [DE #159 in the Chapter 15 Case].

On November 25, 2019, the FR attempted to discover information about the MP Entities and Volo dB by subpoenaing Pegasus Aviation I, Inc. and its former counsel in the New York Case, Coblentz, Patch, Duffy & Bass LLP [DE #149, DE #150 in the Chapter 15 Case, the "Pegasus Subpoenas"].  The Pegasus Subpoenas seek copies of the documents produced by the MP Entities to Pegasus in the New York Case (the "New York Discovery").

The FR moved to compel compliance with the Pegasus Subpoenas on April 13, 2020, and on May 22, 2020, the Court denied the FR's motion to compel without prejudice to the FR serving Volo with a request for the New York Discovery [DE #151, DE #165 in the Chapter 15 Case].

After entry of the Court's order, on May 22, 2020, the FR served Volo with a single request for production of "[a]ll documents produced by the MatlinPatterson Defendants to the Pegasus Parties in connection with the New York Case" [DE #167 in the Chapter 15 Case, the "Rule 2004 Subpoena"].

*The FR's Pursuit of Claims Against MP: Filing Suit Against MP in Brazil*

10

On May 11, 2020, the FR filed a breach-of-fiduciary duty and veil-piercing action against all the MP Entities in Brazil, Case No. 0121755-70.2009.8.26.0100 (the "Brazilian Indemnity Case") [DE# 170-2 in the Chapter 15 Case]. The introductory paragraph of the Brazilian complaint describes the relief sought as follows:

> This lawsuit is being filed by the Bankrupt Estate with aims to seek a Court order recognizing MATLINPATTERSON as the de facto controller of Varig Logistica S/A ("VARIGLOG") in the period from January 27, 2006 up to its bankruptcy, and to order said company to indemnify the Bankrupt Estate for its outstanding liabilities in consequence of a clear violation of its fiduciary duties towards the company, in an act of abuse of its controlling power, when it took actions for its own benefit only and against the interests of its controlled entity VARIGLOG, which not only worsened the company's financial situation but also rendered its operations impossible.

[DE #170-2 in the Chapter 15 Case, p.2].

*The MP Entities Seek to Enjoin the FR from Prosecuting the Brazilian Indemnity Case*

On June 23, 2020, the MP Entities commenced the above-captioned adversary proceeding against the Debtor (the "Adversary Proceeding" or "Adv. Pro."). In their complaint, Plaintiffs allege that the Claims Release in the DAAs include the claims that are the subject of the Brazilian Indemnity Case.[3] Plaintiffs seek

---

3 Although the record reflects that the Debtor has granted the MP Entities releases in three different agreements, the two DAAs and the March 20, 2009 debtor-in-possession financing agreement, the complaint in the Adversary Proceeding refers to only the DAAs and

11

declaratory relief finding that the Debtor released the MP Entities from liability for the claims asserted in the Brazilian Indemnity Case and seek an injunction enjoining the FR from further prosecuting the Brazilian Indemnity Case. Alternatively, Plaintiffs ask this Court for relief from the automatic stay to file their action for declaratory and injunctive relief in New York.

### Matters Under Advisement

On July 6, 2020, Volo filed a Motion to Stay or, in the Alternative, Quash VarigLog's Rule 2004 Subpoena (the "Motion to Quash") [DE #171 in the Main Bankruptcy Case]. On July 27, 2020, the FR filed a Motion for Order (I) Enforcing the Automatic Stay, and (II) Dismissing or, Alternatively, Abating the Adversary Proceeding Against the Debtor (the "Motion to Dismiss") [DE #174 in the Chapter 15 Case; DE #14 in the Adv. Pro.]. The Court set both motions for hearing in October 2020, and the parties filed comprehensive briefs, declarations, and other papers in support of their respective positions.

The FR also sought relief abroad in anticipation of the

---

does not rely on the release granted in the debtor-in-possession financing agreement. However, MP Advisors and Volo rely on the release granted in the debtor-in-possession financing agreement in their opposition to the Foreign Representative's discovery requests. [DE #159 in the Chapter 15 Case, paras. 11, 12, and 57].

October 2020 hearing on the Motion to Dismiss.  On September 4, 2020, the FR filed in Brazil a Motion for Urgent Interlocutory Judicial Relief (the "Motion to Enjoin Adv Pro") [DE #200-1 in Chapter 15 Case; DE #39-1 in Adv. Pro.].  The FR asked the Brazilian court to enjoin the MP Entities from further prosecuting the Adversary Proceeding and to find that the Brazilian bankruptcy court has exclusive jurisdiction to determine what, if any, impact the Claims Release in the DAAs might have on the Brazilian Indemnity Case.

On September 4, 2020, the Brazilian bankruptcy court issued a preliminary ruling "recogniz[ing] its own absolute and exclusive competence to hear and try" the Brazilian Indemnity Case [DE #200-2 in Chapter 15 Case; DE #39-2 in Adv. Pro.].  The Brazilian bankruptcy court rendered a final decision on the FR's Motion to Enjoin Adv Pro on September 30, 2020 (the "September 30th Decision") [DE #42 in Adv. Pro.].

In referring to the Adversary Proceeding, the September 30th Decision by the Brazilian bankruptcy court states that "the claim filed with the U.S. jurisdiction violates the absolute jurisdiction of this Court." [DE #42 in Adv. Pro., p.3].  In addition, in reference to the Claim Release defense, the Brazilian bankruptcy court states that "any possible exclusion of the defendant's liability, due to a contractual clause, should be

13

discussed in this [Brazilian bankruptcy] Court, as a matter of defense in relation to the indemnification claim made" by the FR, on behalf of the Debtor's bankruptcy estate, in the Brazilian Indemnity Case. [DE #42 in Adv. Pro., p.4].

The Brazilian bankruptcy court rejected the FR's request for injunctive relief, stating that it would not enjoin the defendants from prosecuting the Adversary Proceeding because granting injunctive relief "would end up unduly intervening in another country's jurisdiction." *Id.* However, the Brazilian court also "declare[d] that it is the exclusive jurisdiction of this [Brazilian] bankruptcy court to hear and rule [on] any action that has a direct or indirect impact on claims for indemnification for civil liability filed against shareholders to the detriment of the bankrupt company, regardless of any contractual provision setting forth exclusion of liability, which should also be examined by this [Brazilian bankruptcy] Court." *Id.*

On October 19, 2020, this Court conducted a hearing on (i) the FR's Motion to Dismiss the MP Adversary Proceeding and (ii) Volo's Motion to Quash the FR's Rule 2004 Subpoena. The Court took both matters under advisement.

**The MP Entities File
Chapter 11 Petitions In New York**

On July 6, 2021, the MP Entities and an affiliate,

14

MatlinPatterson Global Opportunities Partners (SUB) II, L.P., filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The cases are jointly administered under Case No. 21-11255 (collectively, the "New York Bankruptcy Cases"). Following the filing of the New York Bankruptcy Cases, and at the request of both the FR and the MP Entities, the Brazilian bankruptcy court entered a temporary stay of the Brazilian Indemnity Case.

On July 7, 2021, the MP Entities filed a Notice of Chapter 11 Bankruptcy Filings and Request for Status Conference (the "Notice of Filing") advising this Court of the New York Bankruptcy Cases [DE# 47 and DE# 215 in the Chapter 15 Case]. On July 16, 2021, the Foreign Representative filed his Response to [Notice of Filing] [DE# 216 in the Chapter 15 Case]. In his Response, the FR argues that the automatic stay in the New York Bankruptcy Cases does not stay this adversary proceeding and, as such, this Court can rule on the pending Motion to Dismiss. The FR does concede in his Response that the pending Motion to Quash is stayed [DE# 216 in the Chapter 15 Case, p.3, n.4].

On August 14, 2021, the Court entered its Order Setting Status Conference and Briefing Deadlines [DE# 48 and DE# 217 in the Chapter 15 Case (the "Status Conference Order")]. In that order,

the Court included its preliminary ruling that the FR interpreted correctly the automatic stay and that, unless persuaded otherwise, the Court intended to rule on the Motion to Dismiss.  The Status Conference Order set briefing deadlines and scheduled a status conference for September 2, 2021.

On August 16, 2021, the MP Entities filed Plaintiffs' Limited Response to the [Status Conference Order] [DE# 50 and DE# 221 in the Chapter 15 Case].  The response does not argue that the Court cannot, or should not, rule on the pending Motion to Dismiss. However, the MP Entities request that if the Court dismisses this adversary proceeding, it does not adjudicate "issues that may or will arise in connection with the claims reconciliation process" in the New York Bankruptcy Cases.

On August 27, 2021, the Foreign Representative and MP Entities filed a Joint Status Report.  The Report references an August 16, 2021 Order entered by the Brazilian bankruptcy court staying the Brazilian Indemnity Case for 60 days pending a further report on the status of the New York Bankruptcy Cases.  The Report also references an order in the New York Bankruptcy Cases setting a September 24, 2021 claims bar date.

At the September 2nd Status Conference, the MP Entities urged the Court not to rule on the Motion to Dismiss and offered to voluntarily dismiss this adversary proceeding.  The Court advised

16

the parties that it would likely issue its opinion and the Court restates the reasons here.

First, the Motion to Dismiss was fully briefed and argued and, after a long period under advisement, the Court was prepared to issue its opinion.  Second, the Court had decided the merits of the Motion to Dismiss before the MP Entities filed the New York Bankruptcy Cases.  Third, although the filing of the New York Bankruptcy Cases affects the disputes between the FR and the MP Entities, the history of the Brazilian bankruptcy case, the Pegasus disputes, and the battles over discovery waged in this Court are still relevant and it may be useful for the New York bankruptcy court to review a cumulative background presented in the neutral context of a factual and procedural preamble to a judicial opinion.

Finally, in issuing its opinion, this Court is ruling solely on the record presented in the contested matters pending in this Court and is not purporting to enter an advisory opinion on any issues existing now, or arising later, in the New York Bankruptcy Cases.

**Volo's Motion to Quash the FR's Rule 2004 Subpoena**
**is Denied as Moot Because the Pendency of Volo's New York**
**Bankruptcy Case Stays Enforcement of the Rule 2004 Subpoena.**

Volo seeks relief from its duty to respond to the Rule 2004 Subpoena served by the FR on May 22, 2020.  In its Motion to Quash, Volo asks the Court to (i) stay enforcement of the Rule 2004

17

Subpoena pending the Court's adjudication of the Adversary Proceeding in which Volo seeks injunctive relief, (ii) quash the Rule 2004 Subpoena *in toto* because it was served in violation of the pending proceeding rule, or (iii) narrow the scope of the Rule 2004 Subpoena "to categories that fairly pertain to any legitimate investigation of claims" [Motion to Quash, p.13, para. 40]. Because of the stay imposed upon the filing of Volo's New York Bankruptcy Case, and as conceded by the FR, the FR cannot proceed with discovery against any of the MP Entities without first obtaining relief from the automatic stay in the New York Bankruptcy Cases. Therefore, Volo's obligation to respond to the Rule 2004 Subpoena is stayed, and its Motion to Quash is denied as moot and without prejudice to Volo renewing its request for relief in this Court if the FR obtains relief from the automatic stay in the New York Bankruptcy Cases.

### Comity Considerations and the Pendency of the New York Bankruptcy Cases are Cause to Dismiss this Adversary Proceeding and to Deny the MP Entities' <u>Alternative Request for Relief From the Automatic Stay.</u>

There is one fundamental issue presented in the Adversary Proceeding and in the Motion to Dismiss:  Which court should determine whether the claims asserted in the Brazilian Indemnity Case are barred by the Claims Release? Should that defense be presented and litigated in Brazil, in this Court in the Adversary

Proceeding, or in a New York court, as requested alternatively by MP. As explained below, in the context presented here in a chapter 15 case, principles of comity compel the decision to defer to the Brazilian bankruptcy court.

Referring back to, and summarizing the Brazilian bankruptcy court's September 30th Decision, the Brazilian court made the following findings:

(i) The Brazilian bankruptcy court has the absolute and exclusive jurisdiction to hear and try the Brazilian Indemnity Case;

(ii) The Adversary Proceeding filed here by the MP Entities violates the absolute jurisdiction of the Brazilian bankruptcy court; and

(iii) The Claims Release issue should be determined by the Brazilian bankruptcy court as a matter of defense to the claims in the Brazilian Indemnity Case.

Section 1501 of the Bankruptcy Code emphasizes the importance of cooperation between this Court and the Brazilian bankruptcy court, and "[c]onsistent with section 1501," section 1525(a) of the Bankruptcy Code requires this Court to "cooperate to the maximum extent possible with a foreign court." 11 U.S.C. §§ 1501(a)(1), 1525(a). *See In re Atlas Shipping A/S*, 404 B.R. 726, 738 (Bankr. S.D.N.Y. 2009) ("Once a case is recognized as a foreign

19

main proceeding, chapter 15 specifically contemplates that the court will exercise its discretion consistent with the principles of comity." (citation omitted)). Therefore, in considering the relief requested in the Adversary Proceeding and in considering the Motion to Dismiss, this Court will respect the Brazilian bankruptcy court's sovereign interpretation of the claims and defenses that are pending before it. *See In re Oi S.A.*, 587 B.R. 253, 273 (Bankr. S.D.N.Y. 2018) ("It is simply not this Court's role to second guess the wisdom of the Brazilian courts or overrule their decisions, which would be fundamentally inconsistent with comity. *See, e.g., SNP Boat Serv.*, 483 B.R. at 786; *c.f. In re Rede*, 515 B.R. at 100 (stating with respect to [the] public policy exception of Section 1506 that 'it is not appropriate for this Court to superimpose requirements of U.S. law on a case in Brazil or to second-guess the findings of the foreign court.')").

The Adversary Proceeding will be dismissed.[4]

The MP Entities' alternative request for relief from the automatic stay is moot at this point. At the September 2nd status conference, counsel for the MP Entities confirmed that it is their

---

4 To reiterate, the Court is ruling on the Motion to Dismiss based on the record prior to the filing of the New York Bankruptcy Cases, and in the context of this chapter 15 case. The Court expresses no opinion on which court should determine the Claims Release issue now that the MP Entities are chapter 11 debtors in the New York bankruptcy court.

20

intention to assert objections to any claims filed by the FR in the New York Bankruptcy Cases but not to seek any affirmative relief against the FR or the Brazilian bankruptcy estate. Therefore, the MP Entities have no need for relief from the automatic stay in this chapter 15 case.

For these reasons, it is –

**ORDERED** as follows:

1.    Enforcement of the FR's Rule 2004 Subpoena is stayed.

2.    Volo's Motion to Quash is denied as moot.

3.    The FR's Motion to Dismiss the MP Adversary Proceeding is granted.

4.    This adversary proceeding is dismissed.

5.    Nothing in this Order is intended, or should be construed, as expressing any opinion on issues that are pending, or that may arise, in the New York Bankruptcy Cases.

###

Paul Singerman, Esq.
Berger Singerman LLP
1450 Brickell Ave., Suite 1900
Miami, FL 33131

Christopher Jarvinen, Esq.
Berger Singerman LLP
1450 Brickell Ave., Suite 1900
Miami, FL 33131

Paul Avron, Esq.
Berger Singerman LLP
350 E. Las Olas Boulevard

21

Suite 1000
Fort Lauderdale, FL 33301

Juan Mendoza, Esq.
Sequor Law, PA
1111 Brickell Ave., Suite 1250
Miami, FL 33131

Gregory Grossman, Esq.
Sequor Law, PA
1111 Brickell Ave., Suite 1250
Miami, FL 33131

Kelly Koscuiszka, Esq.
Schulte Roth & Zabel, LLP
919 Third Ave.
New York, NY 10022

Tyler Robinson, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Ave.
New York, NY 10017

**(Attorney Grossman is directed to serve a copy of this Order on
all interested parties and to file a certificate of service)**